UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| IN THE MATTER OF:<br><br>**Fountain Powerboat Industries, Inc.**<br>**Fountain Powerboats, Inc.**<br>**Fountain Dealers' Factory Superstore, Inc.**<br>**Baja by Fountain, Inc.,**<br><br>**Debtors** | Case No. 09-7132-8<br>Case No. 09-7133-8<br>Case No. 09-7134-8<br>Case No. 09-7135-8<br>**Chapter 11** |
|---|---|
| **Motion To Employ Investment Banker For Debtors** ||

Fountain Powerboat Industries, Inc., Fountain Powerboats, Inc., Fountain Dealers' Factory Superstore, Inc., and Baja by Fountain, Inc. (collectively the "Debtors") move the Court pursuant to § 327 of the Bankruptcy Code and Bankruptcy Rules 2014 and 6003 as follows:

1   On August 24, 2009 (the "Petition Date"), the Debtors filed voluntary petitions seeking relief under Chapter 11 of the Bankruptcy Code, and operate as debtors-in-possession.

2   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3   The Debtors wish to retain and seek approval by this Court of the employment of Michael T. Jacobs and the firm of Jacobs Capital, LLC (the "Investment Banker"). The professional services Investment Banker would offer include:

    a.   To give the Debtors financial advice with respect to the value of the business, and with respect to the ability and means by which some or all of the assets could be refinanced or liquidated.

    b.   To assist the Debtors in the marketing and sale of the business and assets as a going concern.

    c.   To perform such other financial services as may be requested by Bankruptcy Counsel from time to time and in the interest of the Debtors.

4   Investment Banker represents no other entity in connection with this case, represents or holds no interest adverse to the interest of the estate or with respect to the matters on which he is to be employed, and is disinterested as that term is defined in 11 U.S.C. §101.

5      Investment Banker has agreed to represent the Debtors for compensation in accordance with the existing engagement agreement, a copy of which is attached to the affidavit submitted with this Motion pursuant to Bankruptcy Rules 2014 and 2016, disclosing the information relevant to this Motion.

6      Investment Banker can and will provide specific benefits to the Debtors and his services will enhance the administration of this case. The Debtors believe that such services will be in the best interest of all parties involved in this proceeding.

Wherefore, the Debtors pray the Court for the following relief:

1      Approve the employment of Investment Banker to provide services to the Debtors in this case as set forth above and in the engagement agreement.

2      Such other relief as the Court may deem necessary and proper.

RESPECTFULLY submitted on behalf of the Debtors, this the 24th day of August, 2009.

/s/ John A. Northen

**Counsel for the Debtors:**
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25762
vlp@nbfirm.com
Stephanie Osborne-Rodgers, NCSB #29374
sor@nbfirm.com
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441

## AFFIDAVIT

I, Michael T. Jacobs, do solemnly depose and declare as follows:

1    I am an investment banker and the owner of Jacobs Capital, LLC, duly licensed to do business in the State of North Carolina.

2    I have been retained to serve as the Investment Banker for the Debtors in this case. A copy of the engagement letter is attached hereto and incorporated by reference. I hold no interest adverse to the above-entitled estate and therefore am a disinterested person as defined in 11 U.S.C. Section 101.

3    The total compensation promised Investment Banker by the Debtors for the services rendered or to be rendered in connection with this case will be:

    a.    A Transaction Advisory Fee equal to 5% of the Purchase Price, payable in cash upon the closing of the Transaction if, during the period of the engagement agreement or within 18 months (24 months in the case of a Transaction or series of Transactions involving any merger, consolidation, reorganization, or other business combination with the Company (regardless of form or structure)) thereafter, a Transaction is consummated or the Company enters into an agreement regarding a Transaction (which is subsequently consummated); <u>provided however</u>, any amount rolled over or invested by Regions Bank (the Debtors primary secured creditor) will be excluded from the computation of the Purchase Price.

    b.    Reimbursement for actual and necessary travel and legal expenses incurred in connection with the engagement.

4    No compensation has been received by Investment Banker from the Debtors or any other person on said account, except as follows:

    a.    A Valuation Fee equal to $25,000 paid by the Debtors prepetition.

    b.    Consulting Fees in the aggregate amount of $55,000 paid by the Debtors prepetition.

5    There are no further undertakings by these or any other persons or entities to pay Investment Banker the post-petition fees or expenses of the Debtors. Investment Banker further states that no understanding or agreement exists for a division of fees or compensation between

Investment Banker and any other person or entity, except that Thomas Securities will receive one percent (1%) of any Transaction Advisory Fee paid to Jacobs Capital, LLC.

I declare under penalty of perjury that the foregoing is true and correct.

This the 24th day of August, 2009.

/s/ Michael T. Jacobs



## Jacobs Capital, LLC

3737 Glenwood Avenue, Suite 100
Raleigh, NC 27612
Tel: (919) 573-6068 Fax: (919) 869-1587
www.JacobsCapital.net

May 5, 2009

Reggie Fountain
CEO
Fountain Powerboats
1653 Whichards Beach Road
PO Box 457
Washington, NC 27889

RE: Corporate Finance Advisory Services

Dear Reggie,

This letter (the "Agreement") represents the agreement between Jacobs Capital, LLC ("Jacobs Capital" or "we") and Fountain Powerboat Industries, Inc., and its wholly owned subsidiaries, Fountain Powerboats, Inc. and Fountain Dealers' Factory Super Store, Inc. (collectively, the "Company" or "you") pursuant to which Jacobs Capital will provide services as the exclusive financial advisor to the Company, including those services provided in connection with the Company's efforts to raise additional capital and/or sell all or substantially all assets of the Company (a "Transaction").

## 1. SERVICES

### *Valuation Services*

We will prepare a written business valuation of the Company that will include our determination of a reasonable range of values that can be expected to be achieved in the sale of the Company or its assets in the context of a Chapter 11 proceeding, using conventional valuation methodologies (the "Report"). The Report will be prepared solely for the use and benefit of the Company and its Board of Directors. The Report will be advisory in nature, for internal use only,

and may not be distributed to any third parties (other than the Company's advisors and lenders, and such use in the Company's intended Chapter 11 proceeding as the Company's counsel may deem necessary or appropriate) without the express written consent of Jacobs Capital. There is no guarantee, express or implied, that the Company will be able to consummate a Transaction within the range of values presented in the Report or otherwise.

*Transaction Advisory Services*
We will advise you in connection with your efforts to raise capital for the Company, including but not limited to a sale of the Company's assets in the context of a liquidating Chapter 11 proceeding, negotiation with the assistance of the Company's counsel of a "stalking horse" offer and an approved bid procedure, and compliance with all applicable requirements of the Court having jurisdiction over the proceeding. Specifically, we will work with you to collect the information needed for potential investors or purchasers including that related to the Company's products/services, customers, market position, competitors, facilities, personnel, governance and financial condition and results, and the preparation of a Confidential Offering Memorandum for distribution to selected potential investors or purchasers. We will work in cooperation with the Company to provide additional information required by parties interested in pursuing a Transaction.

We will recommend an appropriate process, suggest appropriate investors (and include any you wish to add), and contact the parties approved by you. We will advise you in the conduct of negotiations leading to a definitive agreement; testify in the Chapter 11 proceeding to the extent deemed necessary and appropriate; and provide assistance, as reasonably required along with your legal and tax advisors, in the closing of a Transaction. You agree to retain professional legal and tax advisors experienced in transactions of this nature. The terms of any Transaction will be determined by you in your sole discretion and, in the event a Chapter 11 proceeding is commenced, any Transaction will be subject to approval by the Court after due notice and hearing.

*Consulting Services*
During the term of this Agreement, we will consult with the Company with respect to the management of its cash flows, communications with its vendors, dealers and bank.

## 2. FEES

In consideration of the above services, the Company will pay to Jacobs Capital the following amounts:

- Valuation Fee – A valuation fee equal to $25,000, payable upon acceptance of this Agreement.

- Consulting Fee – A non-refundable consulting fee in the amount of $10,000 per month, payable in advance, will also be due upon execution of this Agreement. In the event that the Company contemplates a bankruptcy filing, the Consulting Fee in the month prior to such filing will be $25,000 to accommodate time to work with bankruptcy counsel and negotiate with the bank. No Transaction Advisory Fees will be due on any amounts rolled over by the bank. Once a Chapter 11 proceeding has been commenced, no further Consulting Fees will be due.

- Transaction Advisory Fee-- If, during the period of this Agreement or within 18 months (24 months in the case of a Transaction or series of Transactions involving any merger, consolidation, reorganization, or other business combination with the Company (regardless of form or structure)) thereafter, a Transaction is consummated or the Company enters into an agreement regarding a Transaction (which is subsequently consummated), the Company will pay to Jacobs Capital a transaction advisory fee in an amount equal to 5% of the Purchase Price (as defined below), payable in cash upon the closing of the Transaction. This fee, contingent on raising capital from new entities (and not the lenders to the Company) is the sole remuneration for sourcing, structuring and negotiating the new investment in the Company.

"Purchase Price" means the sum of all consideration agreed to be paid to the Company or its shareholders or lenders in a Transaction, whether in the form of cash, securities, notes received or interest-bearing debt owed by the Company that is assumed by the buyer. Any amount credit-bid, rolled over or invested by Regions Bank will be excluded from the computation of the Purchase Price. Any dividends or distributions declared by the Company between the date hereof and closing of the Transaction that result in a reduction to the Purchase Price will be considered part of the Purchase Price. If the consideration in connection with any Transaction may be increased by payments related to future events ("Deferred Amounts"), or additional amounts invested by the purchaser over the

24 months following the closing, the portion of the Transaction Advisory Fee relating to such Deferred Amounts will be calculated and paid if and when such Deferred Amounts are paid. If the Purchase Price includes Deferred Amounts, you agree to include language in the purchase agreement relating to the Transaction that provides for the Transaction Advisory Fee on the Deferred Amounts to be paid directly to Jacobs Capital by the investor/buyer at the time the Deferred Amounts are paid to you. Fees on any amounts held in escrow will not be considered Deferred Amounts, and the Fee on escrowed amounts will be due at Closing.

If any portion of the Purchase Price is paid in the form of securities, the value of such securities, for purposes of calculating the Transaction Advisory Fee will be determined by the average of the last sales prices for such securities on the five trading days ending five trading days prior to the date of consummation of the Transaction. If such securities do not have an existing public trading market, the value of the securities shall be the mutually agreed upon fair market value on the day prior to the consummation of the Transaction.

Additionally, the Company will reimburse Jacobs Capital for all out-of-pocket travel and legal expenses incurred in connection with this engagement, which expenses will not exceed $3,500 without the prior consent of the Company.

## 3. INDEMNIFICATION

Jacobs Capital and its agents, employees, affiliates, contractors and shareholders shall not be liable for any loss, claim, damage or liability incurred or sustained in connection with or as a result of any act performed or omitted in accordance with the terms of this Agreement, except to the extent that any such loss, claim, damage or liability results from the fraud, willful misconduct or gross negligence of Jacobs Capital. The Company shall, to the fullest extent permitted by law, indemnify and hold harmless Jacobs Capital and its agents, employees, affiliates, contractors and shareholders from and against any and all loss, claim, damage or liability incurred or sustained in connection with or as a result of any act performed or omitted in accordance with the terms of this Agreement, except to the extent that any such loss, claim, damage or liability results from the fraud, willful misconduct, or gross negligence of Jacobs Capital. If for any reason the foregoing indemnification is unavailable to Jacobs Capital or insufficient to hold it harmless, then the Company shall contribute to the amount paid or payable by Jacobs Capital as a result of such loss, claim, damage or liability in such proportion as is appropriate to reflect the relative economic interests of the

Company and its shareholders, on the one hand, and Jacobs Capital on the other hand, in matters contemplated by this Agreement as well as the relative fault of the Company and Jacobs Capital with respect to such loss, claim, damage or liability and any other relevant equitable considerations. The indemnity and contribution obligations of the Company under this paragraph shall be in addition to any liability which the Company may otherwise have, shall extend upon the same terms and conditions to any affiliate of Jacobs Capital and the partners, directors, agents, employees and controlling persons (if any), as the case may be, of Jacobs Capital and any such affiliate, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, and any such affiliate of such persons. The provisions of this Section 3 shall survive any termination or completion of the engagement provided by this Agreement.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, JACOBS CAPITAL AND ITS EMPLOYEES, CONTRACTORS AND SHAREHOLDERS SHALL NOT BE LIABLE FOR ANY PUNITIVE, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE ARISING FROM THIS ENGAGEMENT OR OTHERWISE.

### 4. TERM

The term of the engagement under this Agreement shall be for a period of four months, and shall automatically renew for an additional 60 days if a Transaction has not been consummated at expiration of the initial term, unless terminated in writing on 30 days advance notice by either party, subject to approval by the Court if a Chapter 11 proceeding has been commenced; provided however, that the provisions of Section 2 (Fees), Section 3 (Indemnification), and Section 5 (Other) shall survive any termination or expiration of this Agreement.

### 5. OTHER

The Company will furnish, or arrange to have furnished to, Jacobs Capital such information as Jacobs Capital believes appropriate to its engagement hereunder, and will update such information upon request. You recognize and acknowledge that, in providing services pursuant to this Agreement, we will rely upon and assume the accuracy and completeness of all financial, accounting and other information discussed with or reviewed by us for such purposes, and we do not assume responsibility for the accuracy or completeness thereof. We will have no obligation to conduct any independent evaluation or appraisal of the

assets or liabilities of the Company or any other party or to advise or opine on any related solvency issues. It is understood and agreed that Jacobs Capital will act under this Agreement as an independent contractor with duties solely to the Company and nothing in this letter or the nature of our services shall be deemed to create a fiduciary or agency relationship between us and the Company or its shareholders. Except as set forth in Section 3, nothing in this Agreement is intended to confer upon any other person (including shareholders, employees or creditors of the Company) any rights or remedies hereunder or by reason hereof.

Jacobs Capital agrees to keep confidential all non-public information which it receives or develops concerning the Company and to disclose that information only with the consent of the Company or as required by law or legal process. The Company agrees that, upon completion of its engagement hereunder, Jacobs Capital may place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company and may use a "tombstone" or similar brief description of the transaction in its marketing materials. Thomas Securities, a registered broker-dealer, holds the registered representative license of Michael Jacobs. Pursuant to an agreement between Jacobs Capital and Thomas Securities, a portion of the Transaction Advisory Fee payable to Jacobs Capital may be paid to Thomas Securities. The Company warrants and represents that, except as contemplated by this Agreement, there are no brokers, representatives or other persons which have an interest in any compensation due to Jacobs Capital from any Transaction contemplated herein. This Agreement may not be amended or modified except by a written instrument executed by all parties hereto and shall be governed by and construed in accordance with the laws of the State of North Carolina. In case any provision of this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

[signatures on following page]

Sincerely yours,

*[signature]*

Michael T. Jacobs
President


ACCEPTED AND AGREED TO:
Fountain Powerboat Industries, Inc.,
Fountain Powerboats, Inc. and
Fountain Dealers' Factory Super Store, Inc.

By *R. M. Fountain, Jr.* *[signature]*

Print Name: R. M. FOUNTAIN, JR.

Date: MAY 5, 2009

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

| | |
|---|---|
| **IN THE MATTER OF:**<br><br>**Fountain Powerboat Industries, Inc.**<br>**Fountain Powerboats, Inc.**<br>**Fountain Dealers' Factory Superstore, Inc.**<br>**Baja by Fountain, Inc.,**<br><br>**Debtors** | Case No. 09-7132-8<br>Case No. 09-7133-8<br>Case No. 09-7134-8<br>Case No. 09-7135-8<br>**Chapter 11** |
| **Notice of Motion To Employ Investment Banker For Debtors** ||

    The Debtors filed a motion with the Court requesting authority to employ Michael T. Jacobs and the firm of Jacobs Capital, LLC as Investment Banker for the Debtors. Notice is hereby given that the Motion may be allowed provided no response and request for a hearing is made by the parties in interest in writing to the Clerk of this Court within twenty (20) days from the date of this Notice; and

    Further notice is given that if a response and a request for a hearing is filed by the parties in interest named herein in writing within the time indicated, a hearing will be conducted on the Motion and response thereto at a date, time and place to be later set by this Court and all interested parties will be notified accordingly. If no request for a hearing is timely filed, the Court may rule on the Motion thereto <u>ex parte</u> without further notice.

    Respectfully submitted on behalf of the Debtors, this the 24th day of August, 2009.

                                                       /s/ John A. Northen

**Counsel for the Debtors**
John A. Northen, NCSB #6789
jan@nbfirm.comj
Vicki L. Parrott, NCSB #25762
vlp@nbfirm.com
Stephanie Osborne-Rodgers, NCSB #29374
sor@nbfirm.com
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| IN THE MATTER OF:<br><br>Fountain Powerboat Industries, Inc.<br>Fountain Powerboats, Inc.<br>Fountain Dealers' Factory Superstore, Inc.<br>Baja by Fountain, Inc.,<br><br>Debtors | Case No. 09-7132-8<br>Case No. 09-7133-8<br>Case No. 09-7134-8<br>Case No. 09-7135-8<br>Chapter 11 |
|---|---|
| **Certificate of Service** ||

I hereby certify that I have this day served a copy of the **Motion To Employ Investment Banker For Debtors** by automatic electronic service upon the following:

Marjorie K. Lynch
Bankruptcy Administrator
P O Box 3578
Wilson, NC  27895-5738

This the 24th day of August, 2009.

/s/ John A. Northen

**Counsel for the Debtors**
John A. Northen, NCSB #6789
jan@nbfirm.comj
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone:  919-968-4441