## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

| IN THE MATTER OF: | Case No. 09-7132-8 |
|---|---|
| Fountain Powerboat Industries, Inc., et al | Consolidated For Administration |
| | Chapter 11 |
| Debtors | |

### Report of Sale

Now come Fountain Powerboat Industries, Inc., Fountain Powerboats, Inc., Fountain Dealers' Factory Superstore. Inc., and Baja by Fountain, Inc. (collectively the "Debtors") and submit this report of the sale held October 5, 2009.

1      Pursuant to the Sale Motion, the Debtors made available to all potential purchasers the Sale Procedures, the Sale Procedure Order, the proposed Sale Agreement, wire transfer instructions for the delivery of the required deposit, and electronic access to a data room so that potential bidders could perform their due diligence.

2      As set forth in the Sale Procedures, the deadline for submitting bids was set at 4:00 o'clock p.m. on October 1, 2009. The only bid received by Debtors' counsel was submitted by FB Investments, LLC with a credit-bid in the amount of $8,750,000. No deposit accompanied the bid. No other parties submitted bids, nor did any other bidder appear at the auction on October 5, 2009. A copy of the bid by FB Investments, LLC ("FB Investments") is attached as <u>Exhibit A</u> and a black-lined version showing the changes made to the proposed Sale Agreement is attached as <u>Exhibit B</u>.

3      The Debtors do not support confirmation of the sale to FB Investments as the Debtors believe, exercising their reasonable business judgment, that the proposed financing and plan supported by Liberty Associates, L.C. would provide a greater benefit to creditors and any sale pursuant to the bid by FB Investments would not be in the best interests of the estate. Section 7(c) of the Sale Procedures permits the Debtors to reject, at any time before the entry of an order of the order of the Bankruptcy Court approving a bid from a Qualified Bidder, any bid that, in the Debtors' sole discretion, is contrary to the best interests of the Debtors, the estate and the creditors. Accordingly, the Debtors reject the bid by FB Investments.

4       The FB Investments bid does not comply with the requirement of section 3(b) of the Sale Procedures, as the FB Investments Sale Agreement is less favorable to the estate than the Debtors' proposed Sale Agreement. The FB Investments agreement deletes the provision requiring payment of the net sale proceeds to Regions Bank (now FB Investments) <u>after</u> payment or provision for the Carve Out, which term is defined in the Sale Procedure Order to include allowed costs of administration, including but not limited to any fees and expenses allowed to Debtors' professionals. For example, the fees of the Debtors' investment banker under the terms of the engagement agreement would be 5% of the amount bid, or $437,500, and confirmation of the sale to FB Investments without provision for payment of these and other expenses would render the estate administratively insolvent. Similar concerns exist with respect to other administrative expenses incurred but not yet paid, such as payroll, quarterly fees to the Clerk, and costs incurred in the ordinary course of business.

Respectfully submitted on behalf of the Debtors, this the 8th day of October, 2009.

/s/ John A. Northen

**Counsel for the Debtors**
Northen Blue, LLP
John A. Northen, NCSB #6789
jan@nbfirm.comj
Vicki L. Parrott, NCSB #25762
vlp@nbfirm.com
Stephanie Osborne-Rodgers, NCSB #29374
sor@nbfirm.com
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone: 919-968-4441

## SALE AGREEMENT

This Sale Agreement (this "Agreement") is made and entered into as of October 1, 2009 by and between FB INVESTMENTS, LLC, a Delaware limited liability company (the "Purchaser"), and Fountain Powerboat Industries, Inc., Fountain Powerboats, Inc., Fountain Dealers' Factory Superstore, Inc., and Baja by Fountain, Inc. (collectively the "Debtors"). For the convenience of the parties, certain capitalized terms used in this Agreement are defined in and shall have the meaning set forth below.

## RECITALS

A.      The Debtors are debtors-in-possession in Chapter 11 Bankruptcy Case No. 09-09-07132-RDD consolidated for administrative purposes (the "Bankruptcy Case"), now pending before the U.S. Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court").

B.      The Debtors wish to sell to Purchaser substantially all of its assets, excluding only the "Excluded Assets" as defined below, at the purchase price and upon such other terms and conditions as are specified in detail below, and Purchaser wishes to purchase and acquire such assets from the Debtors.

C.      The Purchaser is the successor and the assign of Regions Bank with respect to the Regions Bank Indebtedness and holder of the Regions Liens, all as defined in the Order Approving Form and Manner of Notice and Sale Procedures, Setting Deadlines For Bids And Objections, And Scheduling Final Hearing To Confirm Sale that was entered by the Bankruptcy Court on September 10, 2009.

D.      The Regions Bank Indebtedness is in excess of $19,000,000.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Debtors hereby agree as follows:

1.      Sale Assets.  On the Closing Date (as defined below), in consideration of the covenants, representations, and obligations of Purchaser hereunder, and subject to the entry by the Bankruptcy Court of the Sale Order (as defined below) and satisfaction of the other conditions hereinafter set forth, each Debtor shall sell, assign, transfer, convey, and deliver to Purchaser, and Purchaser shall purchase from the Debtors, all of each Debtor's right, title, and interest as of the Closing Date in, to, and under the Sale Assets as defined on Exhibit A attached hereto.  For clarification, the Sale Assets excludes the Excluded Assets as defined on Exhibit A



EXHIBIT

A

attached hereto. To the extent any of the Sale Assets constitute executory contracts or unexpired leases designated by Purchaser to be assumed and assigned to Purchaser at the Closing pursuant to Section 365 of the Bankruptcy Code, the sale pursuant hereto shall include the assumption of those leases and contracts by the Debtors and the assignment thereof to Purchaser.

2.    Consideration. As consideration for the Sale Assets, Purchaser shall (a) credit bid the sum of $8,750,000 or such higher amount as may be offered by Purchaser at the Auction (the "Purchase Price") of the Regions Bank Indebtedness, and (b) assume all liabilities of the Debtors under the Assumed Contracts at the Closing Date (the "Assumed Liabilities"). Other than the Assumed Liabilities, Purchaser will not assume and will not be liable for any liabilities or obligations of Debtors of any kind or character whatsoever.

3.    Allocation.

    a.    The Purchase Price shall be allocated among the Sale Assets by Purchaser and Debtors within ninety (90) calendar days following the Closing Date, subject to the following: (i) such allocation shall be reflected in the Tax returns (including, but not limited to, Internal Revenue Service Form 8594) that are filed by Purchaser and the Debtors in accordance with Section 1060 of the Code (and any similar provision of state or local law, as appropriate); and (ii) Purchaser and the Debtors agree to treat and report in filings under the Code (and any state or local law, as appropriate), and in any audit, the transactions contemplated by this Agreement in a manner consistent with such allocation .

    b.    Prior to the Closing, the Purchaser shall have the right to allocate different portions of the Sale Assets to different subsidiaries of the Purchaser (i.e., the Real Estate may be transferred to a different subsidiary of the Purchaser than the Intellectual Property).

4.    Debtors' Representations and Warranties. Debtors hereby make the following representations and warranties to Purchaser:

    a.    Organization, Standing, Power, and Authority.  Debtors are duly organized, validly existing, and in good standing under the laws of the states of their respective incorporation.  Subject to the applicable provisions of Bankruptcy Code, Debtors have all requisite power and

authority to own, lease, and operate the Sale Assets and to carry on their businesses as now being conducted.

b.   Validity of Agreement.  Subject to obtaining the Sale Order, all action on the part of Debtors necessary for the authorization, execution, delivery, and performance of each Debtor transaction document by Debtor, including the performance of Debtors' obligations hereunder, has been duly taken.  Subject to obtaining the Sale Order, Debtors have all requisite power and authority to execute, deliver, and perform this Sale Agreement and the documents reasonably required to consummate the transactions set forth herein.  Subject to obtaining the Sale Order, this Agreement and, when signed by Debtors, each other Debtor transaction document shall constitute the valid and binding obligation of Debtors, enforceable against Debtors in accordance with its terms.

c.   Title to Sale Assets.  Debtor has and at Closing shall convey good and marketable title to the Sale Assets, free and clear of all claims, liens, encumbrances and interests.

d.   Brokers.  Except to the extent authorized by the Bankruptcy Court, Debtors have not, directly or indirectly, retained or engaged any person or entity to act as a broker or finder, or in any similar capacity in connection with the transactions contemplated by this Agreement.

5.   Purchaser's Representations and Warranties.  Purchaser hereby makes the following representations and warranties to Debtors:

a.   Validity of Agreement.  All action on the part of Purchaser necessary for the authorization, execution, delivery, and performance of each Purchaser transaction document by Purchaser, including the performance of Purchaser's obligations hereunder, has been duly taken.  Each Purchaser transaction document, when executed and delivered by Purchaser, shall constitute the valid and binding obligation of Purchaser, enforceable in accordance with its terms.

b.   Organization, Standing, and Power.  Purchaser is an entity which is duly organized, validly existing, and in good standing.  Purchaser has all

requisite power and authority to own, lease, and operate the Sale Assets, to carry on its business as now being conducted, and to execute, deliver, and perform each Purchaser transaction document.

c.    Brokers. Purchaser has not, directly or indirectly, retained or engaged any person or entity to act as a broker or finder, or in any similar capacity in connection with the transactions contemplated by this Agreement.

6.    Conditions to Debtors' Obligations. Debtors' obligation to sell and convey the Sale Assets pursuant to this Agreement is conditioned upon the fulfillment, prior to or at the Closing, of the following:

a.    All of the representations and warranties of Purchaser contained herein continue to be true and correct as of the Closing Date in all material respects, all covenants and obligations to be performed by Purchaser prior to the Closing have been performed in all material respects, and Purchaser has certified the foregoing to the Debtors in writing.

b.    Intentionally Omitted.

c.    Intentionally Omitted.

d.    Purchaser has executed and delivered to the Debtors a "Bill of Sale, Assignment and Assumption Agreement" (the "Assumption Agreement") pursuant to which each Debtor transfers the Sale Assets, assumes and assigns the Assumed Contracts, and Purchaser assumes the Assumed Liabilities and acknowledges that the Debtors have no further liability under the Assumed Contracts for any breach or default thereunder which may occur from and after the Closing, which shall be reasonably satisfactory in form and substance to the Debtors.

e.    The Bankruptcy Court has duly entered the Sale Order (as defined below) and the Sale Order has become a "final order" in that it is not subject to any pending appeal or motion for reconsideration, modification, or amendment thereof and all time for filing such motions has expired or if, such motion has been filed, that it has been withdrawn or denied and any further period of appeal has expired; provided, however, the Debtors and Purchaser shall proceed with Closing even if the Sale Order is not a "final

order" if the Sale Order includes a specific finding that the Purchaser is a "good faith purchaser" pursuant to Section 363(m) of the Bankruptcy Code, and the Sale Order has not been stayed, modified, terminated, or rescinded as of the Closing Date. The "Sale Order" is an Order of the Bankruptcy Court, acceptable in form and content to Purchaser and its counsel in their reasonable discretion, (a) designating the Purchaser (as defined in the Sale Procedures), (b) authorizing the sale of the Sale Assets to the Purchaser pursuant to the Sale Agreement and the Sale Procedures as set forth above, free and clear of any and all claims, liens, encumbrances and interests (c) finding that the Purchaser is a "good faith purchaser" pursuant to Section 363(m) of the Bankruptcy Code, and that none of the grounds set forth in Section 363(n) exist with respect to a sale to the Purchaser, (d) finding that one or more of the grounds for a sale free and clear pursuant to Section 363(f) of the Bankruptcy Code has been met as to each claim, lien, encumbrance or interest in any or all of the Sale Assets, and transferring any and all claims, liens, encumbrances and interests in or upon the Sale Assets to the proceeds of the sale, (e) approving the assumption and assignment of Assumed Contracts, and ordering the Debtors to pay any cure amounts and damages payable to the other parties to such leases and contracts in order to permit assumption and assignment thereof under Section 365 of the Bankruptcy Code, (f) designating a Back-up Bid, and authorizing a sale on the terms of the Back-up Bid in the event the Purchaser fails or refuses to close the transaction, (g) authorizing payment of outstanding ad valorem taxes and the payment or provision for payment of the Carve-out, (h) Intentionally Omitted, (i) authorizing payment of any surplus proceeds to the estate, and (j) providing such other relief as the Debtors shall reasonably request.

f.    Purchaser has paid or provided for the payment of all amounts required to be paid under Section 365 of the Bankruptcy Code in order to cure any pre-petition defaults as to the Assumed Contracts, and to compensate the other party for any pecuniary loss related to such defaults related thereto,

so as permit assumption and assignment of the Assumed Contracts by the Debtors to Purchaser at the Closing Date.

7.    Conditions to Purchaser's Obligations.  Purchaser's obligation to purchase the Sale Assets pursuant to this Agreement is conditioned upon the fulfillment, prior to or at the Closing, of the following:

    a.    All of the representations and warranties of the Debtors contained herein continue to be true and correct as of the Closing Date in all material respects, all covenants and obligations to be performed by the Debtors prior to the Closing have been performed in all material respects, and the Debtors have certified the foregoing to Purchaser in writing.

    b.    The Bankruptcy Court has duly entered the Sale Order and the Sale Order has become a "final order" in that it is not subject to any pending appeal or motion for reconsideration, modification, or amendment thereof and all time for filing such motions has expired or if, such motion has been filed, that it has been withdrawn or denied and any further period of appeal has expired; provided, however, the Debtors and Purchaser shall proceed with Closing even if the Sale Order is not a "final order" if the Sale Order includes a specific finding that the Purchaser is a "good faith purchaser" pursuant to Section 363(m) of the Bankruptcy Code, and the Sale Order has not been stayed, modified, terminated, or rescinded as of the Closing Date.

    c.    Each Debtor has executed and delivered to Purchaser the Assumption Agreement.

    d.    The applicable Debtor has executed and delivered to Purchaser (or a subsidiary of Purchaser) a special warranty deed sufficient to convey to Purchaser good and marketable title to the Real Estate (as defined on Exhibit A).

    e.    The applicable Debtor has executed and delivered to Purchaser (or a subsidiary of Purchaser) trademark assignments, patent assignments and copyright assignments, as applicable, sufficient to convey to Purchaser

good and marketable title to all Trademarks, Patents and Copyrights (as each are defined on Exhibit A) as applicable.

 f. The Debtors have delivered to Purchaser such keys, lock and safe combinations, and other similar items as Purchaser may need in order to have immediate and full occupation, control, and possession of the Sale Assets.

 g. Purchaser shall be satisfied that any and all required notice has been provided to all necessary parties regarding this transaction.

8. "As Is" Transaction. Purchaser Hereby Acknowledges And Agrees That, Except As Otherwise Expressly Provided Above, Debtor Makes No Representations Or Warranties Whatsoever, Express Or Implied, With Respect To Any Matter Relating To The Sale Assets, Including Representations As To The Merchantability Or Fitness Of The Property Or Any Other Portion Of The Sale Assets For Any Particular Purpose. Without In Any Way Limiting The Foregoing, each Debtor Hereby Disclaims Any Warranty, Express Or Implied, Of Merchantability Or Fitness For Any Particular Purpose As To Any Portion Of The Sale Assets. Purchaser Further Acknowledges That The Inspection Period Is Sufficient And Provides Purchaser With An Adequate Opportunity To Conduct An Independent Inspection And Investigation Of The Physical Condition Of The Sale Assets And All Such Other Matters Relating To Or Affecting The Sale Assets As Purchaser Deems Necessary Or Appropriate And That In Proceeding With Its Acquisition Of The Sale Assets, Except For Any Representations And Warranties Expressly Set Forth In This Agreement, Purchaser Is And Will Be Doing So Based Solely Upon Such Independent Inspections And Investigations. Accordingly, Purchaser Will Accept The Sale Assets At The Closing "As Is," "Where Is," And "With All Faults" Except For Any Representations And Warranties Expressly Set Forth In This Agreement.

9. Termination.

 a. By Debtors: If any of the conditions to Closing in Paragraph 6 is neither satisfied nor waived on or before the date by which the condition is required to be satisfied, then Debtors may terminate this Agreement by delivering to Purchaser written notice of such termination.

 b. By Purchaser: If any of the conditions to Closing in Paragraph 7 is neither satisfied nor waived on or before the date by which the condition is

required to be satisfied, and provided that Purchaser is not then in default hereunder, then Purchaser may terminate this Agreement by delivering to Debtors written notice of such termination.

    c.    Intentionally Omitted.

10.    Closing.  The Closing shall take place at the offices of counsel to Purchaser.  The Closing shall be held at a date designated by Purchaser (the "Closing Date") (after consultation with Debtors) which is within twenty (20) days after satisfaction or waiver of the Conditions set forth in Paragraphs 6 and 7, but in no event later than fifteen (15) days after entry of the Sale Order; provided, however, the parties may mutually agree to a later date on which the Closing is to occur.

11.    Default.

    a.    By Debtors: If the sale and purchase of the Sale Assets contemplated by this Agreement is not consummated on account of a Debtor's default hereunder, Purchaser may pursue as its sole and exclusive remedy, either (i) specific performance or (ii) termination of this Agreement.

    b.    By Purchaser: If the sale and purchase of the Sale Assets contemplated by this Agreement is not consummated because of Purchaser's default hereunder, Debtors shall be entitled, as its sole and exclusive remedy hereunder, to the reduction of the Regions Bank Indebtedness in the amount of the $500,000 as full and complete liquidated damages for such default of the Purchaser, the parties hereto acknowledging that it is impossible to estimate more precisely the damages which might be suffered by the Debtors upon the Purchaser's default.  Purchaser hereby waives and releases any right to (and hereby covenants that it shall not) sue the Debtors to seek or claim a refund of such sums (or any party thereof) on the grounds that such amount is unreasonable in amount and exceeds Debtors' actual damages or that the retention of such sums by the Debtors constitutes a penalty and not agreed upon and reasonable liquidated damages.

12.    Miscellaneous.

CHICAGO\2771275.3
ID\GPS - 042053/0081

8

a.  Work To Closing.  Unless and until this Agreement is properly terminated, each party shall use commercially reasonable and diligent efforts to cause all conditions to the other party's obligation to proceed to Closing to be satisfied.

b.  Attorneys' Fees.  If any party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all such fees, costs, and expenses (including all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

c.  Condemnation or Destruction. If any material portion of the Sale Assets has been taken or has been threatened to be taken for a public purpose through condemnation proceedings or a transfer in lieu of such proceedings, Purchaser may, at its sole option, either: (i) terminate this Agreement; or (ii) proceed to closing and receive an assignment of Debtors' right to any condemnation proceeds or payments in lieu thereof with respect to the Sale Assets. If any material portion of the Sale Assets has been damaged by hazard or fire, Purchaser may, at its sole option, either: (i) terminate this Agreement; or (ii) proceed to closing and receive an assignment of Debtors' right to any insurance proceeds.

d.  Notices.  All notices, requests, demands, and other communications hereunder will be in writing and will be personally delivered, delivered by facsimile or courier service to the address set forth below the signature of the party to this Sale Agreement.  Each such notice, request, demand, or other communication will be deemed to have been given (whether actually received or not) on the date of actual delivery thereof, if personally delivered or delivered by facsimile transmission (if receipt is confirmed at the time of such transmission by telephone or facsimile-machine-generated confirmation), or on the day specified to the courier service for delivery to the intended recipient (if such day is one on which the courier

service will give normal assurances that such specified delivery will be made).  Any notice, request, demand, or other communication given otherwise than in accordance with this subparagraph will be deemed to have been given on the date actually received.  Any party may change its address for purposes of this subparagraph by giving written notice of such change to all other parties in the manner provided above.  Whenever any notice is required to be given by law or by this Agreement, a written waiver thereof, duly signed by or on behalf of the person or entity entitled to notice, whether before or after the time stated therein, will be deemed equivalent to the giving of that notice.

e.    Non-Waiver; Rights are Cumulative.  Neither a failure of a party to this Agreement to exercise any power reserved to it in this Agreement or to insist upon compliance by any other party hereto with any obligation or condition in this Agreement nor any custom or practice of the parties at variance with the terms hereof will constitute a waiver of such first party's rights to demand exact compliance with the terms of this Agreement. Waiver by a party to this Agreement of any particular default will not affect or impair such party's right with respect to any subsequent default of the same or of a different nature; nor will any delay, forbearance, or omission of such party to exercise any power or right arising out of any breach or default by any other party hereto of any of the terms, provisions, or covenants of this Agreement affect or impair such first party's rights; nor will such constitute a waiver by such first party of any rights hereunder or rights to declare any subsequent breach or default. Subsequent acceptance by a party to this Agreement of any performance or payments due to it hereunder will not be deemed to be a waiver by such first party of any preceding breach by any other party of any terms, provisions, covenants, or conditions of this Agreement.  Except as otherwise expressly set forth in this Agreement, each party's rights under this Agreement are cumulative and neither the existence of, nor the exercise or enforcement by a party of, any right or remedy under this

Agreement will preclude the exercise or enforcement by such party of any other right or remedy under this Agreement or applicable law. Notwithstanding the foregoing, the consent of a party to proceed with the Closing shall constitute a waiver by such party of any conditions to Closing not satisfied as of the Closing Date if such party is notified in writing at or prior to the Closing that such condition has not been satisfied.

f.    Closing Costs. Each party shall bear its own costs at closing, and Debtor shall pay any transfer taxes or revenue stamps payable with respect to the sale and transfer of the Sale Assets.

g.    No Strict Construction. The fact that counsel to one party or another may have drafted this Agreement or any portion hereof is immaterial and this Agreement will not be strictly construed against any party.

h.    Gender. Whenever the context requires, the gender of all words used in this Agreement includes the masculine, feminine, and neuter.

i.    Severability.  If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term hereof, such provision will be fully severable and this Agreement will be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part of this Agreement, and the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Agreement.  Furthermore, in lieu of each such illegal, invalid, or unenforceable provision, there will be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

j.    Parties Bound; Assignment.  This Agreement will be binding upon and inure to the benefit of the parties hereto (including following the change of control of any such party) and their respective successors and assigns. Purchaser may assign all of its rights under this Agreement to any of its affiliates and, as security, to any lender to Purchaser or any of its affiliates,

but doing so will not relieve the Purchaser of its obligations under this Agreement. Any other assignment by the Purchaser shall require the Debtors' prior written consent.

k.   Entirety; Amendments and Waivers.   This Agreement (including any Exhibits) constitute the entire understanding between the parties with respect to the subject matter hereof and supersede all prior agreements or understandings relating to the subject matter hereof and may be modified or amended only by an instrument in writing executed by each of the parties hereto sought to be bound by such modification or amendment. Any party may waive any of the conditions contained herein or any of the obligations of any other party hereunder, but any such waiver will be effective only if in writing and signed by the party waiving such conditions or obligations.

l.   Paragraph Headings. The paragraph headings contained in this Agreement are for reference purposes only and will not affect in any way the meaning or interpretation of this Agreement.

m.   Bankruptcy Court Jurisdiction. Purchaser and Debtors agree that the Bankruptcy Court shall have exclusive jurisdiction over all disputes and other matters relating to (i) the interpretation and enforcement of this Sale Agreement or any ancillary document executed pursuant hereto and/or (ii) the Sale Assets and/or Assumed Liabilities, and Purchaser expressly consents to and agrees not to contest such exclusive jurisdiction.

n.   Governing Law.   This Agreement will be governed by and construed in accordance with the laws of the State of North Carolina without giving effect to any choice or conflict of law provision or rule (whether of the State of North Carolina or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of North Carolina. Purchaser and Debtors each waive any right to have any such dispute determined by a jury.

o.   Counterparts.   This Agreement may be executed in any number of counterparts and will be effective when each party hereto has executed at

least one counterpart, with the same effect as if all signing parties had signed the same document. All counterparts will be construed together and evidence only one agreement, which, notwithstanding the actual date of execution of any counterpart, will be deemed to be dated the day and year first written above. In making proof of this Agreement, it will not be necessary to account for a counterpart executed by any party other than the party against whom enforcement is sought or to account for more than one counterpart executed by the party against whom enforcement is sought.

p.   Execution by Facsimile. The manual signature of any party hereto that is transmitted to any other party by facsimile will be deemed for all purposes to be an original signature.

[remainder of page intentionally blank; signature page follows]

CHICAGO\2771275.3
ID\GPS - 042053/0081

Executed on the date or dates indicated below.

**DEBTOR:**

By: _____

Date: _____

Address: c/o John A. Northen

Northen Blue, LLP

1414 Raleigh Rd., Ste 435

Chapel Hill, NC 27517

Telephone: 919-968-4441

Fax: 919-942-6603

**Purchaser:**

**FB INVESTMENTS, LLC**

By: Oxford Management, LLC, its manager

By: _____

Selwyn Isakow, Manager

Date: October 1, 2009

Address:

c/o The Oxford Investment Group-California, Inc.

9404 Genesee Avenue, Suite 200

La Jolla, CA 92037

Telephone: (858) 458-1122

Fax: (858) 458-1133

With a copy to:

Gerald A. Jeutter, Jr.

Attorney at Law, PA

615 Oberlin Road, Suite 102

Post Office Box 12585

Raleigh, North Carolina 27605

Telephone: (919) 334-6633

Fax: (919) 833-9793

And a copy to:

Dykema Gossett PLLC

10 South Wacker Drive, Suite 2300

Chicago, Illinois 60606

Attn: Robert Nachman, Esq.

Telephone: (312) 627-2480

Fax: (312) 627-2302

14

EXHIBIT A

**Sale Assets**

The land described in Deed of Trust recorded in Book 1477 at Page 854 (as amended in Book 1532 at Page 683, Book 1609 at Page 406, and Book 1616 at Page 975), Beaufort County Register of Deeds, and all buildings and improvements located thereon and all related easements, rights and interests in adjoining streets and alleys and other appurtenances thereto (the "Real Estate").

All manufacturing, office and other equipment of every nature, furniture, fixtures, supplies, signs, trade dress, tools, molds, repair equipment and other tangible personal property of every nature located on or in the Real Estate and any such property owned by the Debtors and located at any other location.

All inventory, raw materials and work in process, including without limitation all Fountain and Baja boats and new and used trailers and boats, whether located at the Real Estate or located at any other location.

All contracts (i) with customers for purchase of boats from the Debtors, (ii) the licensing agreements with Adsource Media, Champion System, Fattowels, Mt. Borah, Simply Tees, Textile Graphics and New Bright, and (iii) of the Debtors with third-parties relating to the operation of the business, which the Purchaser approves and agrees to assume within 10 days of receiving copies of such contracts (the "Assumed Contracts").

All deposits and prepaid credits from customers and with third parties.

The benefits of any insurance that would cover any of Debtors' product liability claims with respect to any boats manufactured prior to the filing of the Bankruptcy Case.

All books and records relating to the business.

All telephone numbers, mail boxes and other addresses used in connection with the operation of the business.

Any computer software related to the operation of the business and all computer-generated or stored records related to the business, including without limitation all software relating to the Intellectual Property hereinafter described.

All telephone numbers, post office boxes and other addresses related to the business.

All other tangible and intangible assets of every nature relating to the business, including, but not limited to all Intellectual Property.

As used herein, "Intellectual Property" means the collective reference to all rights, priorities and privileges relating to intellectual property, whether arising under United States, multinational or foreign laws or otherwise, including the Copyrights, the Patents, the Trademarks, the Proprietary Information, trade names, websites, domain names, all rights in and to the names "Fountain," "Fountain Powerboats," "Baja", the registered Intellectual Property listed on Exhibit A-1 attached hereto and any variations thereof and all rights to sue at law or in equity for any or all past, present and future infringement or other impairment thereof, including the right to receive all proceeds and damages therefrom.

As used herein, "Copyrights" means all copyrights arising under the laws of the United States, any other country or any political subdivision thereof, whether registered or unregistered and

whether published or unpublished, all rights and interests in copyrights, works protectable by copyrights, and like protections in each work or authorship and derivative work thereof and all registrations and recordings thereof, and all applications in connection therewith, including all registrations, recordings and applications in the United States Copyright Office, and the right to obtain all renewals of any of the foregoing. Copyrights shall also include all internet websites, advertising matter of any Debtor, or any property of a similar nature, including but not limited to, sales literature, print advertisements, television advertisements, or Internet advertisements advertising for sale and selling any products.

As used herein, "Patents" means (a) all letters patent of the United States, any other country or any political subdivision thereof, all reissues and extensions thereof and all goodwill associated therewith, (b) all applications for letters patent of the United States or any other country and all divisions, continuations and continuations-in-part thereof, (c) all rights to obtain any reissues or extensions of the foregoing, and (d) all agreements, whether written or oral, providing for the grant by or to any Debtor of any right to manufacture, use or sell any invention, designs or improvements covered in whole or in part by a Patent.

As used herein, "Proprietary Information" means all unpatented inventions, discoveries, improvements, processes, methods, formulae, applications, ideas, operating concepts, policies, reporting and management systems, customer lists, corporate and other business records, building designs, molds, drawings, specifications, descriptions, catalogues, confidential information, proprietary information, marketing plans, business plans, useful information, all know-how obtained by or used in or contemplated at any time for use in the business of any Debtor whether or not such information has been reduced to a writing or other tangible form, all documents and things embodying, incorporating or referring in any way to such information now or hereafter existing, created, acquired or held, whether or not the foregoing is protected by common law or statutory trade secrets.

As used herein, "Trademarks" means (a) all trademarks, trade dress, service marks, logos, designs, slogans, Internet domain names, vanity telephone numbers and other source or business identifiers, all prints and labels on which any of the foregoing have appeared or appear, and all goodwill associated therewith, now existing or hereafter adopted or acquired, all registrations and recordings thereof, and all applications in connection therewith (other than United States "intent to use" applications until a verified statement of use is filed with respect to such applications), whether in the United States Patent and Trademark Office or in any similar office or agency of the United States, any State thereof or any other country or any political subdivision thereof, or otherwise, and all common-law rights related thereto, and (b) the right to obtain all renewals thereof.

### Excluded Assets

As of the Closing Date (i) any cash on hand, in transit or on deposit, other than deposits and prepaid amounts paid by the Debtors' customers and paid by the Debtors to manufacturers and other third parties, and (ii) any cause of action which may be brought by one or more of the Debtors, including those which may be brought as a debtor-in-possession or by a trustee on behalf of the Debtors pursuant to Chapter 5 of the Bankruptcy Code in connection with this bankruptcy case.

CHICAGO\2771275.3
ID\GPS - 042053/0081

EXHIBIT A-1

Fountain Powerboats, Inc.

US Copyright No. TX0006289111 "Fountain 25th Anniversary: 25 Years of the Fastest
Powerboats on the Water: A Collective Pictorial History of Fountain Powerboats"

US Patent No. 6,443,255, issued 9/03/02, titled "Marine Muffler"

US Trademark Registration No. 3,429,633 - FOUNTAIN - Reg. Date 5/20/08

US Trademark Registration No. 3,429,631 - FOUNTAIN & Design - Reg. Date 5/20/08

US Trademark Registration No. 3,429,630 - Design - Reg. Date 5/20/08

US Trademark Registration No. 3,429,629 - REGGIE FOUNTAIN - Reg. Date 5/20/08

US Trademark Registration No. 3,257,393 - FOUNTAIN - Reg. Date 7/03/07

US Trademark Registration No. 1,606,329 - Design - Reg. Date 7/17/90

US Trademark Registration No. 1,604,523 - FOUNTAIN - Reg. Date 7/03/90


Baja by Fountain, Inc.

US Trademark Registration No. 2,478,143 - .38 SPECIAL - Reg. Date 8/14/01

US Trademark Registration No. 2,529,513 - SPEED CHANGES YOU - Reg. Date 1/15/02

US Trademark Registration No. 2,480,056 - H2X - Reg. Date 8/21/01

US Trademark Registration No. 2,227,636 - ISLANDER - Reg. Date 3/02/99

US Trademark Registration No. 2,799,560 - OUTLAW - Reg. Date 12/30/03

US Trademark Registration No. 0,975,381 - BAJA - Reg. Date 12/25/73

17